**Richard Eppink** (ISB No. 7503)
ritchie@wrest.coop
**Casey Parsons** (ISB No. 11323)
casey@wrest.coop
**David A. DeRoin** (ISB No. 10404)
david@wrest.coop
**WREST COLLECTIVE**
812 W. Franklin St.
Boise, ID 83702
208-742-6789 (phone)

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| **MICHAEL "MICK" HEIKKOLA**, <br> Plaintiff, <br><br> vs. <br><br> **ADA COUNTY, IDAHO**, a county of the State of Idaho; **BRIAN KEEN**, **MICHAEL FRATUSCO**, **MICHAEL GEISEL, JACOB NYDEGGER, JUSTIN PHILYAW**; **SHAWN McGREW,** and **TODD NELSON** in their individual capacities; and **JOHN/JANE DOES 1–5**, other law enforcement officers whose true names are unknown, in their individual capacities, <br><br> Defendants. | Case No. 1:24-cv-24 <br><br> **COMPLAINT** <br><br> **(JURY DEMANDED)** |

Do Idahoans still have the freedom to watch the police? Though our federal courts have repeatedly confirmed the right to observe and even film police, law enforcement in Kuna, Idaho, do not honor that right. When 70-year-old Plaintiff

COMPLAINT – Page 1

Mick Heikkola peered just for a matter of seconds through the window of one of the police cars Ada County taxpayers pay for—in a public parking lot in broad daylight—he was accosted, attacked, and manhandled by officers, and then handcuffed, arrested, humiliated, and jailed.

Though they charged him with resisting officers, the Idaho judge presiding over his case dismissed it, concluding that there was no way the prosecution could prove Heikkola had committed a crime. The court ruled that the officers had no lawful basis to stop, detain, or seize Heikkola, much less mandhandle, arrest, or jail him.

This lawsuit seeks to remedy the injustices Defendants wrought and hold the officers accountable for their unconstitutional misconduct.

## FACTS

1. About half past noon on an ordinary Tuesday, Plaintiff Mick Heikkola drove to the Kuna Police Station. The station had one of Idaho's official prescription drug disposal boxes, where you can safely dispose of unneeded and expired medication. Heikkola's pharmacy accidentally filled an expired prescription, but when Heikkola took it back they told him he would have to go to the police station to safely dispose of the drugs.

2. He followed the pharmacy's direction and parked in the public parking lot just next to the police station, in plain view of both the station and Kuna Middle School nextdoor.

3. Two marked police SUVs were in the stalls next to Heikkola in the parking lot, situated closer to the station's front door. On his way inside to dispose of his medication, Heikkola took a look at the two police cars. He hadn't been this close to a police car in decades and was curious what his taxes were paying for.





4. While peering in the window of the one closest to the station, a nondescript white car pulled into the lot shared by the middle school and police station. It stopped before parking and a man in a black jacket, black beanie, and khaki pants got out. Heikkola had already turned to walk into the police station.

5. Nonetheless, Heikkola then heard the man yelling and aggressively approaching him. The man then asked Heikkola why he was looking in "our" cars; Heikkola, confused, said "my cars too!" as a taxpayer. The man persisted, next shouting at Heikkola to take his hands out of his pockets—to which Heikkola, confronted with the sanctimonious stranger, responded, "Fuck you," and resumed walking into the police station.

**_Defendants accost, attack, and arrest Heikkola_**

6. Heikkola entered the station and chatted briefly with the front desk receptionist while depositing his medications in the secure drop box, as uniformed officers barreled past him.



COMPLAINT – Page 4

7. The uniformed officers showed no concern for Heikkola, who was now handing the paper sack he'd brought his expired meds in to the receptionist who offered to throw it away. But then the officers turned back to Heikkola and ordered him out of the building. As the receptionist later told the Kuna Police Chief, Defendant Fratusco, when he asked her what happened: "I don't know, I came from down the hallway and when I came back, they attacked him."



8. One of the officers, Defendant Justin Philyaw, told Heikkola to take his hands out of his pockets. Heikkola said "no" but showed his hands briefly. In an instant, Philyaw grabbed Heikkola forcefully.

9. And then all the officers in front of the station grabbed Heikkola and pinned his arms behind his back before slamming him into metal railings in front of the station. In almost no time, at least six officers were pinning Heikkola to the

COMPLAINT – Page 5

railing—including the man from the parking lot in the black jacket, black beanie, and khaki pants. It turned out he was a plainclothes officer, Defendant Brian Keen. He was driving an unmarked car and hadn't identified himself as a police officer to Heikkola. A screenshot showing Keen in front of the police station, from Defendant Geisel's bodycam video that day:



10. The officers put Heikkola in handcuffs and, still pinning him against the railings, began to interrogate him. Philyaw searched Heikkola for weapons and found none.



11. Heikkola had undergone invasive surgery just three months before. When the officer slammed him against the railings, he soiled himself.

12. Philyaw and another officer, Defendant Jacob Nydegger, took Heikkola into the station's interview room and continued the interrogation. At no point did any of the officers read Heikkola his *Miranda* rights, and they even persisted interrogating him after he told them he wasn't going to answer any questions.

**Defendants jail and further humiliate Heikkola**

13. Philyaw confirmed to Heikkola that he was under arrest and, eventually, Heikkola was put into a police car and taken to jail.

14. Heikkola sat in his own feces all the way from Kuna to the jail in Boise. Defendants had already so humiliated, intimidated, and abused him, Heikkola was scared to tell them about it lest they humiliate and abuse him even more. But, after

reaching the jail, he broke down and alerted Defendant Philyaw that he had soiled himself when Defendants pinned and forced him against the police station railing. Yet, even after he alerted Philyaw, Heikkola had to continue sitting his own filth until his wife could bail him out later that afternoon.

***Defendants submit false information to support Heikkola's prosecution***

15. Defendants provided reports to the Ada County Prosecutor's office, intending to promote and further Heikkola's criminal prosecution. Among other things, those reports averred that Heikkola "was advised of his Miranda rights" before officers questioned him. Defendant Philyaw certified under penalty of perjury that that statement was true and correct.

16. But that statement was false. And Defendants, including Philyaw, knew (or had every reason to know) it was false when they provided the reports to the Ada County Prosecutor.

***The Court Dismisses the Criminal Case Against Heikkola***

17. Heikkola was charged under Idaho Code § 18-705 with "resisting and obstructing officers." Pursuant to Idaho law, he demanded a formal complaint be filed against him but the State never filed one.

18. Heikkola filed a motion to suppress all evidence against him and dismiss the charge, arguing that Defendant Keen, and therefore all of the officers who accosted him after Keen, had no basis to stop him, much less order him to do anything with his hands.

COMPLAINT – Page 8

19. The Court held an evidentiary hearing and concluded that Defendants "seized and detained Heikkola without reasonable suspicion."

20. The Court found that "Keen did not pursue any additional investigation, explain his reasonings for the contact, or further reveal his identity or employment" to Heikkola.

21. The Court also held that "this Court cannot find that reasonable suspicion existed to believe that Heikkola committed or was about to commit the crime or burglary or theft," which Keen contended he thought Heikkola was doing by looking in the window of a marked police car in a public parking lot in front of a police station in broad daylight.

22. Thus, the Court ruled, "[t]he State has not met its burden to show that law enforcement possessed a reasonable articulable suspicion that a crime was committed or was about to be committed," and further emphasized that "[t]his Court finds that reasonable suspicion did not exist to stop, detain, or seize Heikkola."

23. The Court therefore held that Heikkola's rights were violated, and it dismissed the case against him because the charge against him "cannot proceed or be proven." The State did not appeal the dismissal.

24. Heikkola has suffered harm and damages (including out-of-pocket losses, emotional distress and psychological damage, mental anguish and humiliation, and impairment of reputation) as a direct and proximate result of Defendants' acts and deliberate indifference to his rights. His arrest has also

COMPLAINT – Page 9

severely chilled his exercise of First Amendment rights. He seeks all available damages, including punitive damages, against the individual Defendants in their individual capacities, as their actions were malicious, oppressive, and taken in reckless disregard for his rights.

### PARTIES

25. Michael Heikkola goes by "Mick." He's the Plaintiff here. He is 70 years old. He's been married to his wife for 45 years, and together they have raised three successful children while Mick achieved success as a business owner and his wife taught in the Kuna School District, where his daughter now teaches as well. He is a grandfather to six grandchildren and a homeowner in Kuna, where he has lived for 35 years. He was raised in the Treasure Valley, attending Whitney Elementary, South Junior High, and then Borah High School in Boise. A recent photo of Mr. Heikkola and his wife:



26. Defendant Ada County is a political subdivision of the State of Idaho acting pursuant to its official, established policies, procedures, and practices, under color of Idaho law. Defendant Ada County, by agreement with the City of Kuna and under that city's direction, provided deputy sheriffs, including the individual defendants named here, to staff the Kuna police department. Ada County proximately caused the violations of Heikkola's rights by Ada County's adoption, implementation, and enforcement of official policies, practices, and customs, including an official policy not to properly train, control, or supervise its officers appropriate, which permitted its officers to seize people without reasonable suspicion or probable cause without a warrant, and by the county's and its final policymakers' acts and ratification of the constitutional violations or delegation of authority to subordinates who caused the violations.

27. Defendant Brian Keen was the plainclothes officer who first accosted Heikkola in the police station parking lot, after leaping out of his unmarked car. He is an Ada County Sheriff's Deputy and, at least on January 17, 2023, when Heikkola was wrongfully arrested, Keen was assigned as a deputy working in the Kuna Police Department. He initially stopped Heikkola and ordered him to show his hands without lawful basis, and he participated in use of excessive force against Heikkola. He acted under color of law and was purportedly performing official duties. Keen is sued in his individual capacity.

COMPLAINT – Page 11

28. Defendant Michael Fratusco was (and is) the Kuna City Police Chief. He is a lieutenant with the Ada County Sheriff's Office. He directly condoned and oversaw Heikkola's interrogation and arrest on January 17, 2023, and even came into the interrogation room while Heikkola was cuffed and confined there. The acts and failures to act of his subordinates, including the other named Defendants here, deprived Heikkola of his particular rights under the United States Constitution, and Fratusco directed those subordinates in the acts and failures to act that deprived Heikkola of those rights. Fratusco also refused to terminate a series of acts by those subordinates that he knew or reasonably should have known would cause those subordinates to deprive Heikkola of those rights, and failed to act to prevent those subordinates from engaging in such conduct. Fratusco also engaged in conduct that showed a reckless or callous indifference to the deprivation of Heikkola's rights by Fratusco's subordinates, and Fratusco's conduct was so closely related to the deprivation of Heikkola's rights as to be the moving force that caused Heikkola's ultimate injuries. On information and belief, Fratusco also disregarded the known or obvious consequence that training deficiencies and omissions would cause his subordinates to violate Heikkola's constitutional rights and those deficiencies and omissions did actually cause his subordinates to deprive Heikkola of his constitutional rights. Fratusco acted had final policymaking authority from Ada County and was acting as a final policymaker when he deprived Heikkola of his rights. Fratusco was also acting under color of law and was purportedly performing official duties. He is sued in his individual capacity.

COMPLAINT – Page 12

29. Defendant Michael Geisel was one of the uniformed officers who assisted in using excessive force against Heikkola outside the police station. At least at the time, he was also a deputy Ada County Sheriff working with the Kuna Police Department. Geisel also approved a false report made under penalty of perjury, signed by Defendant Philyaw, which was provided to the Ada County Prosecuting Attorney's office to promote and assist in Heikkola's prosecution. He was also the supervising officer for all other named defendants except Fratusco. The acts and failures to act of his subordinates, including the other named Defendants here, deprived Heikkola of his particular rights under the United States Constitution, and Geisel directed those subordinates in the acts and failures to act that deprived Heikkola of those rights. Geisel also refused to terminate a series of acts by those subordinates that he knew or reasonably should have known would cause those subordinates to deprive Heikkola of those rights and failed to act to prevent those subordinates from engaging in such conduct. Geisel also engaged in conduct that showed a reckless or callous indifference to the deprivation of Heikkola's rights by Geisel's subordinates, and Geisel's conduct was so closely related to the deprivation of Heikkola's rights as to be the moving force that caused Heikkola's ultimate injuries. On information and belief, Geisel also disregarded the known or obvious consequence that training deficiencies and omissions would cause his subordinates to violate Heikkola's constitutional rights and those deficiencies and omissions did actually cause his subordinates to deprive Heikkola of his constitutional rights.

Geisel acted under color of law and was purportedly performing official duties. He is sued in his individual capacity.

30. Defendant Justin Philyaw led the use of excessive force against Heikkola and assisted extensively in Heikkola's arrest, humiliation, and jailing. Philyaw also signed a false report under penalty of perjury, which was provided to the Ada County Prosecuting Attorney's office to promote and assist in Heikkola's prosecution. At least at the time, he was also a deputy Ada County Sheriff working with the Kuna Police Department. He acted under color of law and was purportedly performing official duties. He is sued in his individual capacity.

31. Defendants Jacob Nydegger, Shawn McGrew, and Todd Nelson assisted in exerting excessive force against Heikkola and in his arrest, humiliation, and jailing. At least at the time, they were all Ada County Sheriff's deputies working with the Kuna Police Department. Each acted under color of law and was purportedly performing official duties, and each is sued in his individual capacity.

32. John/Jane Does 1–5, whose true names are unknown, are other law enforcement officers who, on information and belief, did or ratified the acts that harmed Mick Heikkola and deprived him of his rights. Heikkola will amend this complaint after discovery determines the identity of these Doe defendants. They are sued in their individual capacities

33. The only person at the Kuna Police Station who was professional and kind and treated Heikkola like a human being that day was the receptionist. She is not being sued.

## JURISDICTION

34. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the plaintiff's claims because they arise under federal law, as well as under 28 U.S.C. § 2201.

35. Venue is proper with this Court under 28 U.S.C. § 1391(b), because all of the conduct the plaintiff complains about occurred in Idaho.

## CLAIMS FOR RELIEF

36. Mr. Heikkola incorporates all of the allegations above into each of the following claims, as if he had restated them as part of each claim.

**1. Wrongful Arrest and Imprisonment / Unreasonable Seizure
Fourth and Fourteenth Amendments to the United States Constitution
42 U.S.C. § 1983
including both individual and *Monell* liability
(against all Defendants)**

37. Defendants lacked probable cause to arrest Mr. Heikkola for anything he did on January 17, 2023.

38. Defendants caused him to be arrested anyhow, with some of defendants physically effecting the arrest itself.

39. Defendants deprived Mr. Heikkola of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

40. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

41. Defendants Fratusco and Geisel set in motion a series of acts, and also knowingly refused to terminate a series of acts, which they knew or reasonably should have known would cause others to inflict constitutional injuries upon Mr. Heikkola.

42. The acts and failures to act of Defendants Fratusco's and Geisel's subordinates, including the other individual Defendants here, deprived Heikkola of his particular rights under the United States Constitution, and Defendants Fratusco and Geisel directed those subordinates in the acts and failures to act that deprived Mr. Heikkola of those rights.

43. Defendants Fratusco and Geisel refused to terminate a series of acts by those subordinates that he knew or reasonably should have known would cause those subordinates to deprive Mr. Heikkola of those rights, and failed to act to prevent those subordinates from engaging in such conduct.

44. Defendants Fratusco and Geisel engaged in conduct that showed a reckless or callous indifference to the deprivation of Mr. Heikkola's rights by Defendants Fratusco's and Geisel's subordinates, and Defendants Fratusco's and Geisel's conduct was so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused Mr. Heikkola's ultimate injuries.

45. On information and belief, Defendants Fratusco and Geisel disregarded the known or obvious consequence that training deficiencies and omissions would cause the subordinates to violate Mr. Heikkola's constitutional rights and those

deficiencies and omissions did actually cause the subordinates to deprive Mr. Heikkola of his constitutional rights.

46. On information and belief, Ada County's training policies were not adequate to prevent violations of law by its employees or train its employees to handle the usual and recurring situations with which they must deal. Ada County was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees and to the known and obvious consequences of its failure to train its employees adequately. The County's failure to train and to prevent violations of law by its employees played a substantial part in causing, and is so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused, Mr. Heikkola's ultimate injuries, harm, and damages. Ada County's final policymakers, including Defendant Fratusco, acted to deprive Heikkola of his rights while acting as final policymakers and likewise ratified the acts and failures to act by the individual defendants that deprived Heikkola of his rights.

47. Mr. Heikkola has suffered harm and damages (including out-of-pocket losses, emotional distress and psychological damage, mental anguish and humiliation, and impairment of reputation) as a direct and proximate result of Defendants' acts and deliberate indifference to his rights.

48. Mr. Heikkola seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were

malicious, oppressive, and taken in reckless disregard for Mr. Heikkola's civil rights.

**2. Excessive Force**
**Fourth and Fourteenth Amendments to the United States Constitution**
**42 U.S.C. § 1983**
**including both individual and *Monell* liability**
**(against all Defendants)**

49. Defendants caused Mr. Heikkola to be arrested on January 17, 2023, with some of the Defendants physically effecting the arrest itself.

50. There was no need for officers to use any force at all against Mr. Heikkola that day.

51. There was no crime at issue, no threat to the safety of officers or others, and no resistance or effort to evade arrest.

52. The force used by Defendants Keen, Philyaw, Geisel, Nydegger, McGrew, and Nelson was constitutionally unreasonable.

53. Defendants deprived Mr. Heikkola of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

54. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

55. Defendants Fratusco and Geisel set in motion a series of acts, and also knowingly refused to terminate a series of acts, which they knew or reasonably should have known would cause others to inflict constitutional injuries upon Mr. Heikkola.

56. Defendants Fratusco and Geisel condoned, ratified, and encouraged excessive use of force upon Mr. Heikkola.

57. The acts and failures to act of Defendants Fratusco's and Geisel's subordinates, including the other individual Defendants here, deprived Mr. Heikkola of his particular rights under the United States Constitution, and Defendants Fratusco and Geisel directed those subordinates in the acts and failures to act that deprived Heikkola of those rights.

58. Defendants Fratusco and Geisel refused to terminate a series of acts by those subordinates that he knew or reasonably should have known would cause those subordinates to deprive Mr. Heikkola of those rights, and failed to act to prevent those subordinates from engaging in such conduct.

59. Defendants Fratusco and Geisel engaged in conduct that showed a reckless or callous indifference to the deprivation of Mr. Heikkola's rights by Defendants Fratusco's and Geisel's subordinates, and Defendants Fratusco's and Geisel's conduct was so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused Mr. Heikkola's ultimate injuries.

60. On information and belief, Defendants Fratusco and Geisel disregarded the known or obvious consequence that training deficiencies and omissions would cause the subordinates to violate Mr. Heikkola's constitutional rights and those deficiencies and omissions did actually cause the subordinates to deprive Mr. Heikkola of his constitutional rights.

61. On information and belief, Ada County's training policies were not adequate to prevent violations of law by its employees or train its employees to handle the usual and recurring situations with which they must deal. Ada County was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees and to the known and obvious consequences of its failure to train its employees adequately. The County's failure to train and to prevent violations of law by its employees played a substantial part in causing, and is so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused, Mr. Heikkola's ultimate injuries, harm, and damages. Ada County's final policymakers, including Defendant Fratusco, acted to deprive Heikkola of his rights while acting as final policymakers and likewise ratified the acts and failures to act by the individual defendants that deprived Heikkola of his rights.

62. Mr. Heikkola has suffered harm and damages (including out-of-pocket losses, emotional distress and psychological damage, mental anguish and humiliation, and impairment of reputation) as a direct and proximate result of Defendants' acts and deliberate indifference to his rights.

63. Mr. Heikkola seeks all available damages including punitive damages against Defendants in their individual capacities, as those defendants' actions were malicious, oppressive, and taken in reckless disregard for Mr. Heikkola's civil rights.

### 3. Malicious Prosecution
### Fourth Amendment and Fourteenth Amendment (Due Process) to the
### United States Constitution
### 42 U.S.C. § 1983
### (against all individual capacity Defendants)

64. Defendants lacked probable cause to arrest Mr. Heikkola for anything he did on January 17, 2023.

65. Defendants caused him to be arrested and prosecuted anyhow.

66. Defendants prosecuted Mr. Heikkola with malice, without probable cause, and for purposes other than bringing Mr. Heikkola to justice.

67. Defendants prosecuted Mr. Heikkola for the purpose of denying his rights to freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

68. Defendants knowingly provided misinformation to the prosecutor, concealed exculpatory evidence, and otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation and continuation of legal proceedings against Mr. Heikkola.

69. Defendants deprived Mr. Heikkola of his rights under the Fourth Amendment and the Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

70. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

71. Mr. Heikkola has suffered harm and damages (including out-of-pocket losses, emotional distress and psychological damage, mental anguish and humiliation, and impairment of reputation) as a direct and proximate result of Defendants' acts and deliberate indifference to his rights.

72. Mr. Heikkola seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Mr. Heikkola's civil rights.

### 4. Freedom of Speech / Retaliation
### First and Fourteenth Amendments to the United States Constitution
### 42 U.S.C. § 1983
### including both individual and *Monell* liability
### (against all Defendants)

73. Mr. Heikkola was engaged in constitutionally protected activity on January 17, 2023, when he observed police vehicles, paid for by taxpayers, in a parking lot open to the public.

74. Defendants conduct, including in arresting Mr. Heikkola, violated his rights to free expression and to observe matters of public interest under the First and Fourteenth Amendments to the United States Constitution.

75. As a result of exercising his constitutionally protected rights to free expression and to observe matters of public interest, Mr. Heikkola was subjected to adverse actions by Defendants.

76. Those adverse actions would chill a person of ordinary firmness from continuing to engage in the protected conduct.

77. There was a substantial causal relationship between Mr. Heikkola's constitutionally protected activities and the adverse actions he suffered.

78. Defendants lacked probable cause to arrest Mr. Heikkola for anything he did on January 17, 2023, yet Defendants caused him to be arrested anyhow.

79. Defendants also arrested Mr. Heikkola when otherwise similarly situated individuals, including individuals not engaged in the same sort of protected activity, have not been arrested.

80. Defendants deprived Mr. Heikkola of his rights to free expression and to observe matters of public interest under the guarantees of the First and Fourteenth Amendments to the United States Constitution.

81. Defendants acted under color of state law, and they acted or purported to act in the performance of official duties.

82. Defendants Fratusco and Geisel set in motion a series of acts, and also knowingly refused to terminate a series of acts, which Defendants they knew or reasonably should have known would cause others to inflict constitutional injuries upon Mr. Heikkola.

83. The acts and failures to act of Defendants Fratusco's and Geisel's subordinates, including the other individual Defendants here, deprived Mr. Heikkola of his particular rights under the United States Constitution, and

Defendants Fratusco and Geisel directed those subordinates in the acts and failures to act that deprived Mr. Heikkola of those rights.

84. Defendants Fratusco and Geisel refused to terminate a series of acts by those subordinates that he knew or reasonably should have known would cause those subordinates to deprive Mr. Heikkola of those rights, and failed to act to prevent those subordinates from engaging in such conduct.

85. Defendants Fratusco and Geisel engaged in conduct that showed a reckless or callous indifference to the deprivation of Mr. Heikkola's rights by Defendants Fratusco's and Geisel's subordinates, and Defendants Fratusco's and Geisel's conduct was so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused Mr. Heikkola's ultimate injuries.

86. On information and belief, Defendants Fratusco and Geisel disregarded the known or obvious consequence that training deficiencies and omissions would cause the subordinates to violate Mr. Heikkola's constitutional rights and those deficiencies and omissions did actually cause the subordinates to deprive Mr. Heikkola of his constitutional rights.

87. On information and belief, Ada County's training policies were not adequate to prevent violations of law by its employees or train its employees to handle the usual and recurring situations with which they must deal. Ada County was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees and to the known and obvious consequences of its failure to train its employees adequately. The County's failure

to train and to prevent violations of law by its employees played a substantial part in causing, and is so closely related to the deprivation of Mr. Heikkola's rights as to be the moving force that caused, Mr. Heikkola's ultimate injuries, harm, and damages. Ada County's final policymakers, including Defendant Fratusco, acted to deprive Heikkola of his rights while acting as final policymakers and likewise ratified the acts and failures to act by the individual defendants that deprived Heikkola of his rights.

88. Mr. Heikkola has suffered harm and damages (including out-of-pocket losses, emotional distress and psychological damage, mental anguish and humiliation, and impairment of reputation) as a direct and proximate result of Defendants' acts and deliberate indifference to his rights.

89. Mr. Heikkola seeks all available damages including punitive damages against Defendants in their individual capacities, as Defendants' actions were malicious, oppressive, and taken in reckless disregard for Mr. Heikkola's civil rights.

## **PRAYER FOR RELIEF**

Mr. Heikkola requests that the Court enter judgment in his favor, against defendants, and award the following relief:

1. Monetary damages to fairly and reasonably compensate him for the deprivation of his rights, including compensatory (emotional distress) and consequential damages, as well as punitive damages.

2. A declaration that Defendants violated Mr. Heikkola's constitutional

rights.

3. Any other appropriate declaratory or injunctive relief.

4. Pre–judgment and post–judgment interest at the highest lawful rate.

5. Attorneys' fees, costs, and other expenses of this action.

6. Any other relief that justice allows.

**<u>JURY DEMAND</u>**

Plaintiff demands a jury trial on all issues for which one is available.

**DATED**: January 17, 2024

**WREST COLLECTIVE**

/s/ Richard Eppink
Richard Eppink

/s/ Casey Parsons
Casey Parsons

/s/ David A. DeRoin
David A. DeRoin

**ATTORNEYS FOR PLAINTIFF**